And we'll hear from the appellant. Thank you. Good afternoon, Your Honor. Elizabeth Brancard, appearing on behalf of the appellant. I want to go ahead and reserve five minutes, if I could, for rebuttal. So today, following remand from the Supreme Court, we're back here making the same basic argument we've been making throughout this case, and that is that the duties of supervision and control imposed on Defendant David Meyer as the licensed officer-broker of the Triad Realty Company, coupled with the facts of this case, make him potentially vicariously liable for the discrimination by the Triad sales agents. Now, the Supreme Court did not rule on that argument, and instead it remanded the case back here for your decision on that argument. What the Supreme Court granted cert on was the question, quote, whether the criteria under the Fair Housing Act are different so that owners and officers of corporations are automatically and absolutely liable for an employee's or agent's violation of the act, even if they did not direct or authorize and were otherwise not involved in the unlawful discriminatory acts. That question did not encompass, and the Supreme Court did not answer, the question that we've raised in this case, and that is, what is the effect of the real estate licensing laws, on the application of traditional agency principles to liability under the Fair Housing Act? We don't believe that the Supreme Court's decision should in any way alter the result that this panel reached in the original decision on the case, because traditional principles of agency support Meyer's liability in this case. What has always made this case different from the ordinary case of corporate liability is the application of the real estate licensing laws. As the Court previously found in this case, the real estate licensing law imposes a personal duty and responsibility on a corporate officer broker, such as David Meyer, to supervise and assure compliance with the real estate laws by the corporate salespersons, including compliance with the housing discrimination laws. Although in a generic corporation with no sort of licensing involved, when a corporate officer delegates a corporate duty to a corporate employee, the corporate employee is performing the duty on behalf of the corporation only, and it's the corporation that is ultimately vicariously liable if that employee commits a tort. Tell me exactly what the statute provides in any California cases that impose this kind of supervision, this supervisory obligation on? The statute is California Business and Professions Code, section 10159.2, and that is the provision that states, if you want me to quote it, I can grab it. Do you want me to? No, go ahead. It states that when a corporation may designate an officer to serve as its corporate officer broker, and that person is charged with the responsibility of assuring, of directing and controlling and assuring compliance of the corporation's acts with the real estate laws, including the supervision of the corporation's salespersons. And what the California cases have said is that that's a personal duty that's imposed on the corporate officer broker. You don't look to the corporation to fulfill that duty. You look to the corporate officer broker, and otherwise you can't have a corporation being responsible for a licensed kind of duty, a professional duty, and that the way that the brokerage is supposed to operate is that the brokerage operates only through and because of the license of the corporate officer broker. And those cases are the Norman case, Milner v. Fox, AmVest Mortgage, and also the legislative history of Business and Professions Code, Section 101-59.2, and that's all in our supplemental brief. It was also in, except for the legislative history, it was also in our original briefing. So this imposed a personal duty on to Meyer to direct and control the activities of Crank. And under common law principles of vicarious liability, when a statute imposes a personal duty on someone, they may not just delegate that duty to anyone. They are required to make sure that it's done themselves. And if they do delegate it to someone, to an agent, and the agent commits a tort, doesn't fulfill the duty, they can be liable as a principle to third parties. In this case, we argue that the record shows that that's exactly what happened, and that it created an agency relationship between Meyer and Crank that was separate and apart from the agency relationship that was in place between Triad as the corporation and Crank as the corporate employee. This relationship occurred in 1995, it started, when a couple years before the discrimination act, in this case, when Meyer and Crank agreed that Crank was going to take over the day-to-day operations of this real estate company, Triad, but that Meyer would retain, would remain the Triad's designated broker. He would still be responsible for their licensing. And Meyer thought, well, they were going to wait until Crank got his own license, and they thought that was going to take about two years, and then he would take over officially under the brokerage, with the brokerage license. Meyer admitted in his deposition that he fulfilled his professional duties, which he acknowledged he had to supervise the Triad salespeople to make sure they complied with the law. He fulfilled those duties through Grove Crank. He delegated those duties to Grove Crank. There's never been any argument in this case that that factually is incorrect. He, there's no dispute, he delegated his responsibilities to Grove Crank to take care of that, and that was a personal duty. So because he delegated a duty that was imposed by him, on him personally under the licensing law to Crank, and the discrimination occurred in the course of Crank supervising the Triad salespersons, our position is that we've created a sufficient factual showing to survive summary judgment on whether there had an agency relationship, and thus Meyer could be held vicariously liable. So there's no need for this court on remand to hold that all corporate officer brokers could be liable as a matter of law for the discrimination of their salespeople, of the corporation's salespeople. And on the other hand, though, the rule that the district court applied and what the defendant wishes to apply here is a rule that as a matter of law they never can be liable. And the answer is in between. By saying that the court is to apply traditional principles of agency, the Supreme Court was telling the court and all the courts, you need to look at these things on a case-by-case basis. Is there an agency relationship in this case? Well, yes, we've shown there's an agency relationship in this case, despite the fact that there was a corporate license involved. That's just, it's irrelevant. It doesn't govern, or should we say it's not relevant, but it does not govern. The fact that the corporation was the licensee principle does not take away from the fact that there was also an agent principle relationship between Crank and Meyer. So applying that factual standard to this case, we've generated a sufficient showing that there was an agency relationship. And the issue that has not been litigated is whether the acts were within the scope of that agency, just because it's not at issue at this point because it was never litigated. So our position is it shows that the facts show that it was, because it was in the course of supervising an agent that it took place, that the discrimination took place. Would you think we need to remand for further development of the record? No, I don't believe so, because the defendant moved for summary judgment solely on the basis, as the district court had set up, that he could not be liable because Crank was operating as a salesperson under the corporation's license and not an individual license by Meyer. So I don't believe that you need to remand for factual findings because all you need to do is decide whether or not, as a matter of law, he could not be liable under any circumstance, which is what the district court held, unless he had an individual license and Crank was operating under that individual license. Of course, we're dealing with a summary judgment, so there would be no factual findings, would there? Well, was that a trick question? No, I mean, you're right. So on the issue that was also remanded from the Supreme Court, whether or not the corporate bail could be pierced, our position, and we're not asking the court to rule on that, we're just saying when we remand the case, that's what we want to argue and we should be allowed to raise that argument, because what happened was we relied on the existence of the non-delegable duty, which the Supreme Court kicked out and the reason this court took the case was to get rid of the non-delegable duty in fair housing law, and we relied on that and we were able to plead and I believe show enough facts that a corporate bail piercing would be a legitimate argument to raise. I've just recently reread your complaint, like about 15 minutes ago, and I didn't see any allegation of piercing the corporate bail. No, not in so many words, but we did allege that Meyer exercised widespread control of Triad, that he owned and operated Triad, that he was the president, that he was the designated officer and broker, which legally gave him immense control over the organization, that Triad paid taxes under Meyer's tax ID number, that he had agency relationships with all of these people, they all reported to him. That may not plead a corporate bail cause of action, but it isn't a cause of action, it's just a method of... But you're asserting that you're alleging facts that do allow the corporate bail to be pierced, isn't it? No, what we're arguing is that we should be allowed to go back to the district court and flesh out that argument because there are enough facts floating around in the record that show that... Isn't the answer to Ms. Fletcher's question yes? You are alleging facts from which, in your complaint, from which a piercing of the bail argument can be made? Yes, yes, except that some of those facts come from the summary judgment proceeding, not from the complaint that would support... But there were some things... What was alleged in the summary judgment? In the summary judgment, we alleged that it was known by the court and by the parties that there were no assets in the corporation and that it was underfunded, the only insurance policy it had had an explicit discrimination exclusion, and to quote the defense counsel, Crank himself was stone cold broke. So that was a fact that everyone knew, and it's in the record, in the colloquies with the court. How about corporate formalities? Was that discussed at all? Well, it was in several ways. One being that Meyer claimed that he transferred the corporation to Crank, although he admitted there were no documents that showed that. I would say that would be a pretty egregious case of not observing corporate formalities. In addition, just looking at the actual record, it appears that they were not observing corporate formalities in the sense that the minutes, the minutes when Mr. Meyer stepped down as president show that they adopted, the last set of minutes that were adopted were from two years before, and that would certainly raise an issue. That's in the record? That's in the record, yes. It's not in the record. We did not argue that in the record, but that is in the record. But it is the record below? Yes, it's in the record below. How about the payment of the taxes under Meyer's number and name? That is a complaint allegation. And then as far as also one of the corporate bail issues is whether or not there is some sort of wrongdoing going on, and that would be Meyer's failure to supervise his abdication of his professional responsibilities. Any more questions? No. Do you want to reserve your time? All right. Thank you. May it please the Court. Douglas Benidon for Appellee David Meyer. Your Honors, Plaintiff's sole theory is and always has been that my client is vicariously liable under the FHA because he exercised control over the corporation's salespersons and employees. This Court considered and adopted that argument in its prior decision as the basis for reversing district court's judgment in favor of Mr. Meyer. The Supreme Court has now explained that this theory is incorrect, that there can be no liability based solely on a right of control, and consequently the district court's judgment in favor of Mr. Meyer should be affirmed. Well, they certainly sent it back to us to consider some other things, Counsel. Among them, I suppose, would be whether he was exercising any actual supervision or control or was required to by the State of California. Would those be open issues? We've never disputed that he had a duty to supervise, Your Honor. That is a duty that's imposed by statute. Where the plaintiff's argument goes awry is in trying to draw a distinction between what they call personal obligations and corporate obligations. Plaintiffs concede that as a general rule where a corporate officer delegates a corporate responsibility to another corporate employee or agent and that sub-agent somehow is in breach of their duty, the corporation is still the entity that is vicariously liable, not the corporation's officer. So is that really the intent of the brokerage statute when they place a particular requirement that a person, an individual, be the responsible broker with a duty to supervise, a fiduciary duty to supervise? They would have to, Your Honor. A corporation is a non-person. A corporation in of itself cannot supervise. There has to be an individual who supervises. The California statutory scheme designates the officer broker as the person uniquely qualified to conduct that supervision on behalf of the corporation. But there's something more than that because quite conceivably, a state could allow a corporation to be a real estate broker without any personal responsibility of a responsible broker. The corporation could simply be the broker with the responsibility. But here they have a requirement. In fact, there was an amendment to do that, to have a particular person who is responsible for supervising the employees. Correct, Your Honor. Your first, I mean, whether a state could say there need be no responsible person, I don't think that that would be in the best interest of corporate real estate licenses, and I think that was the impetus behind the California legislation is you need to have a responsible person. But it's important to remember that Mr. Meyer does not hold an individual broker's license. He is a broker solely as an officer of the corporation. His duty to supervise is solely as an officer of the corporation. Well, didn't he have a duty also to supervise as the responsible broker? Isn't that the statute? No, the broker is the corporation, Your Honor. The broker is not Mr. Meyer. Well, he is the responsible broker that allows the corporation to have its license. Correct. He's the officer broker. And it is only through an officer broker that a corporation can hold a license. But the corporation is still the broker. And within the corporate structure, the officer with responsibility for supervising. Doesn't the person who is the officer broker have to have a broker's license? No, he does not. He has to be qualified to hold a license, but he does not have to himself hold a license. And, in fact, Mr. Meyer does not. Has to be qualified. Has to be qualified, but does not have to have an individual license. And, in fact, Mr. Meyer does not have an individual license. On the issue of what his responsibilities were, in the complaint it alleges that Crank, Stump, and Carroll report to Mr. Meyer. Now, that may or may not be true. This is an allegation in the complaint. That's an allegation that to what extent that's true. I mean, that's contrary to what the plaintiffs are trying to argue here, that Mr. Meyer, in fact, had delegated his duties to Mr. Crank. So I don't know to what extent they're even still trying to prove that allegation. But to the extent that, sure, as he is the officer broker, then he would be the person responsible within the corporation for the supervision of the corporation's agents and employees. I think it would be helpful to think of the practical consequences of saying that an individual officer broker could never delegate his duties without creating sub-agencies. He could delegate his duties, but that doesn't mean that he doesn't still have a principal-agent relationship in delegating. Isn't that right? It does not create an agency. It's every time a corporate officer gives corporate responsibilities to another agent within the corporation, does not create an agency relationship within the corporation. Here we're dealing with a very small corporation, but conceivably a large corporation where you have one designated officer broker but hundreds of agents. It's unrealistic and impractical to think that this one broker, officer broker, could physically supervise all the agents, and that's pointed out very well in the amicus brief submitted on our behalf by the California Association of Realtors. It's much more practical to say that, sure, some of these duties, for example, overseeing the continuing education requirements have to be delegated to other people within the corporation. Yet if you're to say that every time that they delegate those supervisory functions, there's a sub-agency created, sub-agency upon sub-agency, so that anywhere along the line there's a breach that all of these officers of the corporation are personally liable, that defeats the purpose. Not all of the ones, just the designated broker under the statute. But why the broker? The person, you have to have one, as I read that statute, you have to have one person who is responsible to assure that the California and federal statutes are carried out. Okay. And that person is responsible irrespective of the corporation. I disagree, Your Honor. He's responsible only because of the corporation. He is supervising on behalf of the corporation. He's not supervising as an individual. Well, what is the statute? Do you have the statute right, Frank? I don't, Your Honor. Oh, that's right. I'll try to find that. That's 101-59-2. Excuse me, Your Honor. I do have it in me. I'm going to join appendix from the Supreme Court.  Okay. I thought the officer broker shall be responsible for the supervision and control of the activities conducted on behalf of the corporation by its officers and employees as necessary to secure full compliance with the provisions of this division, including the supervision of salesperson's license to the corporation in the performance of acts for which a real estate license is required. The key words there, Your Honor, are they're acting on behalf of the corporation. Back up to the page before it says that he's responsible for supervising the conduct of the employees and salesperson's actions on behalf of the corporation. They are not acting on behalf of the corporate broker. They are acting on behalf of the corporation. I don't read it that way. Shall be responsible for the supervision and control of the activities conducted on behalf of the corporation by its officers and employees as necessary to secure the full compliance with provisions of this division. So this designated officer broker is responsible to assure that the corporation is complying with the law. It isn't that just the corporation is responsible for complying with the law. That would be what you're suggesting. But here we have a person who's responsible to assure that the corporation, its officers, are complying with the law. He is the designated officer for ensuring that compliance. If there is noncompliance, it's still the corporation that's not complying. It's not the individual officer that's failing to comply with. Why? Because he has the obligation. The statute makes him a person that's responsible for assuring that the officers, which would include maybe the president, secretary, or whoever, comply with the law. Yes, Your Honor, but that does not make him the principal. The principal is still the corporation or the employer. A opposing counsel has cited several cases to us. Right. What do those cases tell us? Those cases do not draw the distinction that counsel asserts, that there's a distinction between a personal and a corporate obligation. There's nothing in there that says that the corporate officer broker is going to be personally liable for breaches of the Fair Housing Act by a salesman or employee of the corporation, which is the issue here. Well, why does the state have this requirement of a corporation officer broker if they don't have some direct responsibilities and potential liability on their own? They do have direct responsibilities, Your Honor. They have a very important direct responsibility to supervise the other employees and agents of the corporation. That does not create liability. In fact, that's the purpose of the corporation is to insulate them from liability. Otherwise, there would be no such thing as corporate licenses or corporate brokers. But what does it add to have this requirement at all? If the corporation is liable for what the corporation does under either scheme, what's the point? The point, Your Honor, is to ensure that there's someone there to supervise. How do you ensure that if there's no responsibility that goes along with this? There is. There's responsibility to the corporation. There's nothing in the legislative scheme that says if the no, Jesse Olson's question is very pertinent. If if all it is required is for the corporation to comply with the law, what's the purpose of having a designated person as an officer broker? You're just saying the corporation has to comply with the law. But here they say something more. If there's a designated person who is required to supervise, to assure that the corporation and its officers comply with the law. It's again, it's getting back to a right of control, which. Now what you're saying is by control, it's duty to do it. It's a duty to supervise. How does that? I realize I shouldn't be asking questions. That does not create an agency, which is the issue that we're supposed to be exploring here. I'm not disputing that the officer broker has a duty to supervise. And if they somehow do that negligently, they could potentially liable under the state scheme. To whom? That's an open question, Your Honor. Right now, California law only says that that's a disciplinary action. If they fail to fulfill their functions under the code, they're subject to license revocation, not a civil action. That does not create an agency between this broker and the people he's supervising. So again, maybe to answer your question. But if he delegates that, that responsibility that he has to supervise, if he specifically delegates it to someone else, which he did in this case, I think, to Crank, doesn't that make him still responsible as a person to whom if Crank doesn't carry out the duties? I agree with that point, Your Honor. But I still say that that doesn't create an agency for purposes of the Fair Housing Act. It still could make him potentially liable for a violation of California's scheme. But it does not create an agency for purposes of liability under the Fair Housing Act. I think that that's perhaps where my confusion was, Your Honor, in responding to your earlier questions, as I'm not saying that the officer broker is in any way immune from liability for failing to perform his functions under the statute. And if that's the impression I gave, it's incorrect, and I apologize. What I'm saying is those duties imposed by statute do not create an agency relationship such that if those duties are not performed, if there's a breach by a salesman or an employee of the corporation, that there's an agency. If Plaintiff's complaint here is that Mr. Meyer did not fulfill his obligations to supervise, their claim is won under state law, and, in fact, that's what they've alleged in their original complaint. They allege statutory negligence and regular negligence, claiming that Mr. Meyer failed to properly supervise, was negligent. Those claims were time-barred, and that finding by the district court has never been challenged. The Fair Housing Act should not be used as a backstop for time-barred state claims. And that's what we're here on today, is whether or not there's a cause of action for vicarious liability under the Fair Housing Act, not whether or not Mr. Meyer might be viable for violation of the California statutory scheme. Did you want to talk about the Pearson corporate bail? Our position on that briefly, Your Honor, is set forth in our brief, is that it was never raised. It was raised for the first time in response to something the Solicitor General raised in the Supreme Court, which, incidentally, their argument was that was the only basis for a remand. It was never pled. There's no evidence that we were allowed to offer on summary judgment because we were never on notice of that issue. I think there's a principle that if, in fact, facts are pled that would give rise to a claim, that the person doing the complaint doesn't necessarily have to allege the particular legal theory upon which those facts would give rise to liability. Isn't that right? I agree, Your Honor. They don't have to necessarily say the magic word, but we have to look at what facts they did allege. The facts they alleged were complete control of the corporation, which in and of itself is not enough to establish an alter ego. They didn't argue to this Court on the prior appeal that there were facts established in alter ego, except for a footnote on the last page of their brief saying that based on his control of the corporation, potentially there was an alter ego theory that could be asserted. They did allege he was owner. Owner. Alleged that... Sole shareholder. Sole shareholder was president. Yeah. Isn't that enough? No, Your Honor. What else do you need? You need a failure to observe corporate formalities. You need undercapitalization. You need fraudulent purpose. No, you don't need fraudulent. Okay. These are other things that could have been alleged that would have put Mr. Meyer on notice. This is more than just a procedural formality. It's a substantive difference between his liability as an officer broker and potentially as an alter ego of the corporation. It was never adequately alleged. Wasn't there also an argument that the corporation was underfunded? No allegation of that, Your Honor. I mean, not maybe in the complaint, but in the evidence. The evidence is there's no insurance, and that's the whole reason. Pardon? The evidence is that there's no insurance for the corporation, and that's the whole reason for this lawsuit is the search for a deep pocket. How about the manner in which the corporation was transferred to Crank? That, again, would only go to whether or not there was a valid transfer. Our position is that he was not the owner because there was a transfer. This Court found that there was a tribal issue on that fact, and again, we are for this. But I mean the way he did it did not comply with any corporate formalities. In which event, he's still the owner. What? In which event, he would still be the owner. Right. Right. We're not disputing for the purposes of this proceeding that he's the owner, sole shareholder, officer broker. But the fact that he was trying to do that in that fashion as though he were the alter ego of the corporation, that he could just do it without any minutes, without anything formal. Again, that's not an allegation of the complaint. That's something that came out potentially on the summary judgment. Well, yeah. We're reviewing the summary judgment. Right. Our position is that at most it should be sent back for a further proceedings on that limited issue of alter ego. I'm sorry. I didn't quite get what you said. Yeah. I said if this Court disagrees with our position that it was not adequately pled, that at most that should lead to a remand to the district court for further proceedings on that limited issue of alter ego. But our position is that it was not properly pled and was not properly raised in this Court. How about the payment of the taxes under Myers? That's incorrect. Huh? That's alleged, but it's incorrect. It's not correct? That's not correct. But that's, again, since we were never on notice for purposes of summary judgment that this was going to be an issue, those facts were not fully developed. All right. Thank you. Thank you, Your Honor. In answer to the question about, well, what counsel was raising about having a multitude of employees and other brokers to whom you delegate supervision, the California Code of Regulations has a provision that addresses that, and that is Title 10, Section 2725, and that can be found at page 215 of our supplemental excerpt of record. And what that says is it gives a description that a broker shall exercise reasonable supervision, and it describes what reasonable supervision is. And it says establishing policies, rules, procedures, systems to review, oversee, and inspect and manage, one, transactions requiring a license, two, documents that may have a material effect on the rights or obligations of parties to transactions, maintenance of such documents, filing storage, handling trust funds, advertising services, familiarizing salespersons with the requirements of federal and state laws relating to the prohibition of discrimination, and regular and consistent reports of license activities. And it goes on to say that you can take those procedures, the form of those procedures and rules can be taken into account, the size of the office. But the important thing it says is a broker can use the services of other brokers and salespersons to help him administer these policies so long as the broker does not relinquish overall responsibility for supervision of the acts of the salesperson's license to the broker. So our argument is not every single officer broker would have to be liable or would be liable, but in this specific situation he did delegate all his responsibilities to Grove Crank, and he did relinquish that overall responsibility. And that is what created the agency relationship. What was that statutory reference? That's Title 10, Section 2725 of the California Code of Regulations, and it's at Supplemental Excerpts of Record 215. And just briefly, Mr. Meyer has been on notice the entire case that we were attempting to pin liability on him personally as an owner. And so that is just to say there's no prejudice that he would have for having the case remanded to make that argument. So any other questions? Yeah. What was it that you produced in evidence in response to the motion for summary judgment that would sustain your claim that Alter Ego, the person in the corporate veil, was a legitimate theory? The information that I gave to you earlier. Yeah. One thing about the tax thing was only in the complaint. That was just in the complaint, yes. That wasn't in there. Right. That was not in there. The tax thing was not in there. What was in there was that there was no insurance, but it was also known that there was no money. I mean, the district court was well aware of that. How was it? Because the defense counsel had represented that there was no money. And he had done the district court, and this is in, actually it's in our supplemental excerpts of record, the entire, the hearing on the motion to dismiss. And there's a lot of discussion about the fact that he doesn't want us to go to trial if there's no assets and that we'd better find out if there's no assets. And the defense counsel says, I keep telling them there's no assets in the corporation. So that is in at pages, probably starting at page 40. I would start at page 40 of the excerpts of record, the supplemental excerpt of record. And just definitely there's in pages 45, 46, 47. Okay, from 40 on. Sorry. Okay. Anything else? Yes, that, well, how the issue came up in summary judgment was that we argued that he was, there was a genuine issue as to whether, in fact, he was still the owner. Because what the district court had said in the motion to dismiss is, in a footnote, is that the corporate veil in the Hilltop case, which it was relying on to say that there could be no liability in this case, and he said, you know, in that case there's no liability because the officer broker was not the sole owner of the corporation. And so our argument was, well, look it, there is evidence that this fellow was the sole owner of the corporation, and, therefore, this is an argument, the corporate veil piercing argument is an argument that we should be entitled to make. Does that make sense? Thank you very much. All right. Thank you, counsel. The case, just heard, will be submitted. Appreciate the arguments of both counsel. We will adjourn.
judges: Hug, B. Fletcher, Tashima